UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JORGE AGUILAR,<br><br>Petitioner,<br><br>v.<br><br>FERETI SEMAIA et al.,<br><br>Respondents. | Case No. 5:26-cv-00023-MCS-SSC<br><br>**ORDER RE: EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER (ECF NO. 4) AND THIRD SEALING APPLICATION (ECF NO. 26)** |

Petitioner Jorge Aguilar brings this action for a writ of habeas corpus. (Pet., ECF No. 1.) Petitioner filed an ex parte application for a temporary restraining order and for issuance of an order to show cause why a preliminary injunction should not issue. (Appl., ECF No. 4.) The Court ordered briefing on the application. (Order Setting Br. Schedule, ECF No. 9; Corrected Order Setting Br. Schedule, ECF No. 10.) Respondents Fereti Semaia, in his official capacity as Warden of Adelanto Detention Facility; Kristi Noem, in her official capacity as Secretary of the Department of Homeland Security; Pam Bondi, in her official capacity as Attorney General of the United States; Todd Lyons, in his official capacity as Acting Director of Immigration and Customs Enforcement ("ICE"); and Ernesto Santacruz Jr., in his official capacity as Director of the Los Angeles ICE Field Office, filed a brief opposing the application. (Opp'n, ECF

No. 22.) Petitioner filed a reply. (Reply, ECF No. 25.)[1] The Court heard the application on January 14, 2026. (Mins., ECF No. 30.)

## I. BACKGROUND

Petitioner is a Mexican citizen who entered the United States when he was two years old. (Aguilar Am. Decl. ¶ 1, ECF No. 27-2.) Petitioner grew up believing that he was a United States citizen and has not left the United States since his arrival. (*Id.*) When Petitioner was 19 years old, he was convicted of having sexual intercourse with a minor and domestic violence. (Forbes Decl. Ex. E, at 3, ECF No. 4-7.) The victim was Petitioner's then-girlfriend, who was 17 years old. (Aguilar Am. Decl. ¶ 6.) Petitioner served approximately one year in jail. (*Id.* ¶ 7.) In June 2021, he was arrested by ICE. (*Id.*; Forbes Decl. Ex. E, at 3.) ICE detained Petitioner for one morning and then released Petitioner pursuant to an Order of Supervision, with check-ins and GPS monitoring. (Aguilar Am. Decl. ¶ 7.)

On December 7, 2023, ICE served Petitioner with a notice to appear in immigration court. (*Id.* ¶ 14.) Petitioner began going to immigration court hearings and continued attending his check-ins with ICE and the Department of Homeland Security's Intensive Supervision Appearance Program ("ISAP"). (*Id.*) The parties disagree about whether Petitioner fully complied with ISAP's requirements. (*Compare* Heard Decl. ¶ 17, ECF No. 22-1, *with* Aguilar Am. Decl. ¶ 14, *and* Aguilar Suppl. Decl. ¶¶ 1–2,

---

[1] In connection with Petitioner's reply, Petitioner applies to file amended declarations from Petitioner and Petitioner's counsel under seal. (3d Sealing Appl., ECF No. 26.) Petitioner submits that the filings, which he proposes to redact, "contain personal identifying and sensitive information about Mr. Aguilar's family and friends" and Petitioner's medical history. (*Id.* at 2.) Petitioner represents that Respondents take no position on the application. (*Id.*) The Court has reviewed the filings proposed to be sealed and concludes that compelling reasons exist to seal the filings because they reveal confidential information about Petitioner's health. *See, e.g.*, *Civ. Beat L. Ctr. for Pub. Int., Inc. v. Maile*, 117 F.4th 1200, 1210 (9th Cir. 2024). Accordingly, the sealing application is granted.

ECF No. 25-2.) On June 18, 2025, ICE detained Petitioner when he came to the ISAP office for a check-in. (Aguilar Am. Decl. ¶ 17.) Petitioner has been in custody at the Adelanto ICE Processing Center since then. (*Id.*)

On August 19, 2025, Petitioner broke down during a hearing. (*Id.* ¶ 18.) The immigration judge deemed Petitioner mentally incompetent to represent himself and appointed him counsel. (Forbes Decl. Ex. H, ECF No. 4-10.) Petitioner received a bond hearing due to his mental incompetency status on December 29, 2025. (Aguilar Am. Decl. ¶ 22.) The immigration judge denied Petitioner bond on the basis that he was a danger to the community, relying on Petitioner's prior criminal conviction. (*Id.*)

Petitioner claims that his detention violates his Fifth Amendment right to substantive and procedural due process, the Administrative Procedure Act, and the Rehabilitation Act. (Pet. ¶¶ 30–102; Appl. 8–23.) He argues that he has been irreparably injured given the deprivation of his constitutional rights and the adverse effects detention is having on his mental health. (Appl. 23–24.) Petitioner seeks preliminary injunctive relief in the form of an order requiring his immediate release from detention and enjoining Respondents from re-detaining him unless he is afforded a pre-deprivation hearing before a neutral adjudicator, at which Respondents must show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community. (*Id.* at 27.) The Court issued an order prohibiting Respondents from relocating Petitioner outside the district while the instant application is pending. (Order Setting Br. Schedule 3; Corrected Order Setting Br. Schedule 3.)

## II. LEGAL STANDARD

The standards governing temporary restraining orders and preliminary injunctions are essentially the same. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely

to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. The Ninth Circuit also employs a "version of the sliding scale approach" where "a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, an injunction may issue if the plaintiff shows that serious questions go to the merits, the balance of hardships tips sharply toward the plaintiff, the plaintiff is likely to suffer irreparable injury, and an injunction is in the public interest. *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021).

## III. DISCUSSION

The Court has jurisdiction to consider Petitioner's claims under 28 U.S.C. § 2241. *See Trinidad y Garcia v. Thomas*, 683 F.3d 952, 956 (9th Cir. 2012) (en banc) ("The writ of habeas corpus historically provides a remedy to non-citizens challenging executive detention."). Respondents argue that 8 U.S.C. § 1252(g) strips the Court of power to review the petition. (Opp'n 8–9.) For the reasons persuasively and repeatedly articulated in decisions of courts in this circuit, 8 U.S.C. § 1252(g) does not divest the Court of jurisdiction to consider a claim for relief grounded on a base "distinct from how the government's prosecutorial discretion was deployed" in commencing proceedings, adjudicating cases, or executing removal orders. *Doe v. Noem*, 781 F. Supp. 3d 1055, 1069 (E.D. Cal. 2025) (collecting cases); *see also Ibarra-Perez v. United States*, 154 F.4th 989, 996 (9th Cir. 2025) ("The provision applies only to three discrete actions that the Attorney General may take: her decision or action to *commence* proceedings, *adjudicate* cases, or *execute* removal orders. Instead of sweeping in any claim that can technically be said to arise from the three listed actions, the provision refers to just those three specific actions themselves." (cleaned up)); *C.A.R.V. v. Wofford*, No. 1:25-CV-01395 JLT SKO, 2025 U.S. Dist. LEXIS 216277, at *20 (E.D. Cal. Nov. 1, 2025) (asserting jurisdiction notwithstanding § 1252(g) where "there is no

removal order at issue here and the central issue is Petitioner's continued detention" after termination of release). Accordingly, while the Court lacks jurisdiction to review the Government's decision to commence removal proceedings against Petitioner, *see* 8 U.S.C. § 1252(g), or to review the merits of the Government's decision to detain Petitioner and the immigration judge's decision to deny him bond, *see* 8 U.S.C. § 1226(e), the Court may review Petitioner's claim that he should have been provided a bond hearing before his re-detention.

Notwithstanding the Court's jurisdiction, the application must be denied because Petitioner fails to demonstrate that he is likely to succeed on the merits of his claims. "Likelihood of success on the merits is the most important factor," *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018) (internal quotation marks omitted), which "is especially true for constitutional claims," *see Jr. Sports Mags. Inc. v. Bonta*, 80 F.4th 1109, 1115 (9th Cir. 2023).

The Fifth Amendment provides that "[n]o person shall . . . be deprived of . . . liberty . . . without due process of law." U.S. Const. amend. V. That protection extends to all persons in the United States, "including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Id.* at 690; *see also United States v. Salerno*, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Garro Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (collecting cases).

In *Morrissey v. Brewer*, the Supreme Court recognized that the decision to release a criminal defendant from custody on parole creates "at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions," generating a

liberty interest that "is valuable and must be seen as within the protection of" due process. 408 U.S. 471, 482 (1972). District courts in this circuit consistently recognize that this principle extends to individuals subject to removal proceedings. *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019) ("Just as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen] have a liberty interest in remaining out of custody on bond."); *accord Garro Pinchi*, 792 F. Supp. 3d at 1032 (collecting cases for the proposition that "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody").

Generally, the Due Process Clause "requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). To determine what procedures are constitutionally sufficient to protect a liberty interest, courts apply the three-part test established in *Mathews v. Eldridge*:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. 319, 335 (1976).

The Ninth Circuit has observed that *Mathews* is "a flexible test that can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022); *see also Pinnacle Armor, Inc. v. United States*, 648 F.3d 708, 716 (9th Cir. 2011) ("This is not a bright line test, but is flexible depending on the circumstances." (internal quotation marks omitted)).

Here, Petitioner was released in June 2021 pursuant to an Order of Supervision. (Aguilar Am. Decl. ¶ 7.) Petitioner lived out of custody, developing deep family and community ties in the four years between his release and detention. (*Id.* ¶¶ 9–13.) Accordingly, due process protects Petitioner's liberty interest in remaining out of detention. *See C.A.R.V.*, 2025 U.S. Dist. LEXIS 216277, at *26–27 (finding a petitioner had a constitutionally protected liberty interest in remaining out of ICE custody based on the "approximately four years on parole" preceding his re-detention).

Therefore, under *Mathews*, Petitioner should have been afforded a pre-detention hearing before his re-detention. *See, e.g.*, *Fernández López v. Wofford*, No. 1:25-cv-01226-KES-SKO (HC), 2025 U.S. Dist. LEXIS 205596, at *16 (E.D. Cal. Oct. 17, 2025) ("On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing, which should have been provided before she was detained."); *Garro Pinchi*, 792 F. Supp. 3d at 1036 (concluding petitioner who was released on her own recognizance then subsequently detained was likely to succeed on the merits under *Mathews* framework).

However, that does not end the Court's inquiry, because Petitioner has received post-detention process, including a bond hearing before an immigration judge on December 29, 2025. (Aguilar Am. Decl. ¶ 22.) Here, the Ninth Circuit's reasoning in *Rodriguez Diaz* is instructive. In *Rodriguez Diaz*, the petitioner received a bond hearing two months into his detention, was denied bond, and was subsequently detained for 14 more months. 53 F.4th at 1194–95. The petitioner moved for a new bond and custody redetermination hearing before an immigration judge on the basis of a material change in circumstances, then filed a habeas petition in federal district court when his motion for a new bond hearing was denied. *Id.* at 1195. Analyzing the petitioner's claims under the *Mathews* framework, the Ninth Circuit found that the petitioner had shown that he had a private interest in freedom from prolonged detention. *Id.* at 1207. However, when analyzing the first *Mathews* factor, the Ninth Circuit cautioned that it was "important not to overstate the strength of Rodriguez Diaz's showing," *id.*, noting that the first

*Mathews* prong requires the court to "also consider the process he received during this time[] [and] the further process that was available to him," *id.* at 1208. The petitioner "was not without process . . . because a further bonding hearing before an [immigration judge] was available to him throughout the period of his detention upon a showing of materially changed circumstances." *Id.* at 1207.

Moreover, the Ninth Circuit found that the second and third *Mathews* factors weighed against the petitioner. With respect to the risk of erroneous deprivation, the petitioner received an individualized bond hearing before an immigration judge, where he was represented by counsel and had the right to appeal to the Board of Immigration Appeals, and he had the right to seek an additional bond hearing on the basis of materially changed circumstances. *Id.* at 1209. These procedural safeguards ensured that "the agency's decision to detain Rodriguez Diaz was subject to numerous levels of review," such that "the risk of erroneous deprivation would be relatively small." *Id.* at 1210 (internal quotation marks omitted). Finally, with respect to the third factor, the Government has a "significant" interest in enforcing its immigration laws. *Id.*at 1208–09.

Though the *Rodriguez Diaz* petitioner's case arose in a different procedural posture than Petitioner's present case, the Ninth Circuit's analysis of the process afforded the petitioner is highly relevant to analyzing the significance of the post-deprivation bond hearing that Petitioner received on December 29, 2025. As in *Rodriguez Diaz*, Petitioner has indeed shown that he has a private interest in freedom from detention because of his release pursuant to an Order of Supervision in 2021, but the Court must consider that interest alongside the process Petitioner has been afforded while in detention, including the December bond hearing.

Turning to the second *Mathews* factor, the Court determines that the risk of erroneous deprivation is low because Petitioner has been afforded adequate procedural safeguards. Petitioner has received significantly more process than in other cases in which courts have granted relief under *Mathews*. *See, e.g.*, *Fernández López*, 2025 U.S.

Dist. LEXIS 205596, at *18–19 (granting relief under *Mathews* where petitioner was detained without a pre- or post-detention bond hearing); *Singh v. Andrews*, No. 1:25-cv-00801-KES-SKO (HC), 2025 U.S. Dist. LEXIS 132500, at *25 (E.D. Cal. July 11, 2025) (same). Here, an immigration judge deemed Petitioner incompetent and appointed him counsel. After six months of detention, Petitioner received a bond hearing before a neutral immigration judge where he was represented by counsel and had the opportunity to challenge his detention. Petitioner may appeal the outcome of that bond hearing to the Board of Immigration Appeals. 8 C.F.R. § 236.1(d)(3). In addition, if a material change in Petitioner's circumstances occurs, he may seek an additional bond hearing. *Id.* § 1003.19(e). The second *Mathews* factor also looks to the "probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. Here, the additional value of any additional procedural safeguards is minimal. Ordering Petitioner released and barring his re-detention absent a pre-detention bond hearing would not meaningfully further mitigate the risk of erroneous deprivation of Petitioner's liberty. Petitioner has already had a bond hearing before an immigration judge and has an avenue to appeal the denial of bond. A second bond hearing would be duplicative and of little value given that Petitioner has not shown his circumstances have materially changed since December. Moreover, if Petitioner's circumstances materially change, he may seek an additional bond hearing at any time.

Finally, the Court notes that the Government has a strong interest in enforcing its immigration laws. *See Rodriguez Diaz*, 53 F.4th at 1208 ("[T]he government clearly has a strong interest in preventing aliens from 'remain[ing] in the United States in violation of our law.'" (second alteration in original) (quoting *Demore v. Kim*, 538 U.S. 510, 518 (2003))).

Accordingly, the Court concludes that the process Petitioner has received post-detention is sufficient to protect Petitioner's liberty interest. Because Petitioner is unable to state a claim under *Mathews v. Elridge*, he is unlikely to succeed on the merits of his Fifth Amendment procedural due process claim.

Petitioner is equally unlikely to succeed on the merits of any of his other claims for relief. Petitioner's first claim is for violation of his right to substantive due process under the Fifth Amendment on the basis that he is neither a danger to the community nor a flight risk. This claim appears to challenge the merits of the Government's decision to detain Petitioner and the immigration judge's decision to deny him bond. The Court lacks jurisdiction to review either decision. 8 U.S.C. § 1226(e) ("No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."); *see also Valenzuela v. Semaia*, No. 5:25-cv-02853-SSS-RAO, 2025 U.S. Dist. LEXIS 256917, at *4 (C.D. Cal. Dec. 10, 2025) ("Although Petitioner may disagree with the outcome of the [immigration judge's] determination at the bond hearing, this Court does not have jurisdiction to sit as an appellate body over this issue.").

Petitioner's second claim for violation of his right to substantive due process under the Fifth Amendment with respect to the health and safety of his confinement, fourth claim for violation of the Administrative Procedure Act, and fifth claim for violation of the Rehabilitation Act all concern conditions of Petitioner's confinement. Petitioner argues that Respondents have shown deliberate indifference to Petitioner's mental health needs, (Appl. 9–12), that Respondents have "denied [him] access to appropriate psychiatric treatment and suitable living conditions," (*id.* at 21), and that he is being discriminated against on the basis of his mental health, (*id.* at 22–23). While these are serious claims, a habeas petition is not the proper vehicle for a challenge to the conditions of confinement. *See Badea v. Cox*, 931 F.2d 573, 574 (9th Cir. 1991) ("Habeas corpus proceedings are the proper mechanism for a prisoner to challenge the legality or duration of confinement. A civil rights action, in contrast, is the proper method for challenging conditions of confinement." (cleaned up)); *see also Wilson v. Ponce*, 465 F. Supp. 3d 1037, 1047 (C.D. Cal. 2020) ("A writ of habeas corpus is the proper avenue for prisoners to challenge the fact or duration of their confinement. However, a challenge to conditions of confinement are generally brought pursuant to a

civil rights statute, such as § 1983 or *Bivens*." (citation omitted)). Therefore, Petitioner is unlikely to succeed on the merits of these claims as well.

The Court declines to consider the other *Winter* factors. *See Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc) ("Because it is a threshold inquiry, when a plaintiff has failed to show the likelihood of success on the merits, we need not consider the remaining three *Winter* elements." (cleaned up)).

## IV. CONCLUSION

The application is denied. The Court dissolves its order restricting Respondents from removing Petitioner from the district. Pursuant to General Order No. 05-07, further proceedings on the merits of the petition are referred to the assigned magistrate judge.

**IT IS SO ORDERED.**

Dated: January 16, 2026

MARK C. SCARSI
UNITED STATES DISTRICT JUDGE